[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14930
Non-Argument Calendar
_____

D.C. Docket No. 3:17-cr-00055-MCR-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

D'MARKUS JAMES,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 12, 2018)

Before WILLIAM PRYOR, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

D'Markus James appeals his 108-month sentence, imposed after he pled guilty to possession of a firearm by a convicted felon.  On appeal, James argues that the district court erred in calculating his base offense level under the Sentencing Guidelines and in applying a four-level enhancement for trafficking of firearms.  After careful review, we affirm.

## I.    BACKGROUND

Bureau of Alcohol, Tobacco, and Firearms ("ATF") Special Agent Peter Bondjuk met James and his codefendant Deangelo Black while working undercover.  Bondjuk bought methamphetamine from Black several times.  Once, Black told Bondjuk during a telephone call that he knew someone—later identified as James—with a handgun and an assault rifle to sell.  Bondjuk then met Black and James, who previously had been convicted of a felony, to purchase the firearms. During the sale, Bondjuk observed James wiping off the handgun with his t-shirt before handing it to Black, who gave the handgun to Bondjuk.  Black then pulled a rifle with an attached ammunition feeding device out of his car.  Bondjuk asked the men if the gun was hot, meaning stolen, and James said it was not.

James pulled Bondjuk aside to talk to him about firearms purchases.  James told Bondujk that "the shit you been buying, that's coming from me," and explained that a "sawed-off" Bondjuk recently had bought in his undercover

capacity had come from him.  Doc. 106 at 20.[1]  According to Bondjuk, in layman's

terms a "sawed-off" is an illegal firearm, although the firearm he previously had

purchased technically was legal.  James told Bondjuk he could provide additional

firearms whenever Bondjuk was prepared to buy more, and Bondjuk told James

that he did "a little load to Chico in Alabama," believing this made clear that he

was selling the firearms to others.  Doc. 106 at 31.  James responded that he would

be ready when Bondjuk was ready.  Bondjuk asked for a reduced price for

purchasing multiple firearms, and James agreed, saying he would cut Bondjuk a

deal for buying two, three, or four firearms at a time.

Bondjuk gave Black cash for the purchase of the guns, and Black handed

James part of the money.

A grand jury indicted James on one count of possession of a firearm by a

convicted felon in violation of 18 U.S.C. §§ 922(g), 924(a)(2), and 2.  James pled

guilty pursuant to a written plea agreement.  In anticipation of sentencing, the

probation prepared a presentence investigation report ("PSI").  The PSI set James's

base offense level at 22 under U.S.S.G. § 2K2.1(a)(3)(A), which applies when "the

offense involved a . . . semiautomatic firearm that is capable of accepting a large

capacity magazine."  The PSI added a four-level enhancement under

U.S.S.G. § 2K2.1(b)(5), which applies when "the defendant engaged in the

---

[1] "Doc. #" refers to the numbered entry on the district court's docket.

trafficking of firearms."   After applying a two-level enhancement for obstruction of justice (namely, exposing Black as a cooperating witness), the PSI calculated a total offense level of 28.  With a criminal category of II, James's guidelines range was 87 to 108 months' imprisonment.

James objected to his base offense level and firearms trafficking enhancement.  As to his base offense level, James argued that the government was required to prove, but did not, that the ammunition feeding device on the rifle he and Black sold to Bondjuk was a large capacity magazine rather than an "attached tubular device," which the guidelines commentary specifically excludes from coverage under U.S.S.G. § 2K2.1(a)(3)(A).  *See* U.S.S.G. § 2K2.1 cmt. n.2.  As to the firearms trafficking enhancement, James argued that the government could not prove that he knew the firearms he sold to Bondjuk would be disposed of unlawfully.

To prove the trafficking enhancement, the government called Bondjuk to testify about his purchase of the two firearms from James and Black, and specifically about his conversation with James about the sale of multiple firearms. To prove the basis for the base offense level, the government called another ATF agent to testify that the rifle James and Black sold to Bondjuk had attached to it a large capacity magazine.  The agent testified that she believed the rifle did not involve a tubular device, but she cautioned that she was "not an expert on the legal

4

definition" of a tubular device.  Doc. 106 at 11. The district court noted that the evidence the government presented was "weak" but nonetheless overruled James's objection.  *Id.* at 47.  The court also found the evidence of trafficking sufficient and overruled James's objection to the enhancement.

The district court adopted the guidelines calculation in the PSI and determined that a sentence of 108 months' imprisonment was appropriate.  The district court also expressly stated that the 108 months "would be the same sentence that I would impose even if I have erred in the . . . base offense level," citing the number of firearms that James admitted he had sold and his obstruction of justice.  *Id.* at 63-64.

This is James's appeal.

## II.    STANDARDS OF REVIEW

We review a district court's findings of fact for clear error and its application of the Sentencing Guidelines *de novo*.  *United States v. Maddox*, 803 F.3d 1215, 1220 (11th Cir. 2015).  We will reverse based on a district court's erroneous factual finding only if we are left with a "definite and firm conviction that a mistake has been committed."  *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1136-37 (11th Cir. 2004) (internal quotation marks omitted).  We will not reverse a sentence based on an erroneous calculation of the guideline range if the error is harmless.  *United States v. Perkins*, 787 F.3d 1329, 1341 (11th Cir. 2015).  Where

a district court clearly states that it would impose the same sentence regardless of its resolution of a guidelines dispute, any error is harmless as long as the sentence imposed is reasonable based on the sentencing factors in 18 U.S.C. § 3553(a).[2] *United States v. Keene*, 470 F.3d 1347, 1348-49 (11th Cir. 2006).

### III.    ANALYSIS

On appeal, James challenges his base offense level of 22 under U.S.S.G. § 2K2.1(a)(3)(A).  He argues that his base offense level should instead have been 20 under U.S.S.G. § 2K2.1(a)(4).  James also challenges the four-level enhancement he received under U.S.S.G. § 2K2.1(b)(5) for trafficking of firearms. For the reasons set forth below, we affirm.  The district court's determination that the U.S.S.G. § 2K2.1(b)(5) enhancement applied was not clearly erroneous.  And the district court explicitly stated that it would have imposed a sentence of 108 months' imprisonment even if it erred in calculating his base offense level.  Had James's base offense level been 20, a sentence of 108 months still would have been reasonable.

We take James's arguments out of turn, first addressing the sufficiency of the evidence supporting the trafficking enhancement and then addressing the base offense level.

---

[2] The factors delineated in 18 U.S.C. § 3553(a) include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence to criminal conduct, to protect the public from further crimes by the defendant, and to provide the defendant with needed educational or vocational training; and the kinds of sentences available and established sentencing ranges.  *See* 18 U.S.C. § 3553(a)(1)-(5).

6

**A.      James's Trafficking of Firearms Enhancement**

James argues that the district court clearly erred in determining that he trafficked the firearms, asserting that the government failed to prove he knew Bondjuk intended to dispose of the firearms unlawfully.  We cannot agree.

When the government seeks an enhancement under the Sentencing Guidelines over a defendant's factual objection, it "has the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence."  *United States v. Asante*, 782 F.3d 639, 642 (11th Cir. 2015) (internal quotation marks omitted).  For the enhancement under U.S.S.G. § 2K2.1(b)(5) to apply, "the [g]overnment must prove that the defendant (1) transported or transferred, or received with the intent to transport, two or more firearms to someone else; (2) knowing that the defendant's conduct would result in another's unlawful possession, use or disposal of those firearms."  *Id.* at 643. James only challenges the second of these elements.  The government can meet its burden on the second element either by proving that the defendant had reason to know that he was transferring the firearms to someone who could not legally possess them or that he had reason to know that the individual intended to use or dispose of the firearms unlawfully.  *Id.* at 643-44.  We look "not to what actually happened to the firearms, but instead to the circumstances known to the

7

defendant," so the fact that a defendant transfers firearms to an undercover law enforcement officer is immaterial. *Id.* at 644.

The district court did not clearly err in finding sufficient evidence that the circumstances known to James were such that he had reason to know that Bondjuk (in his undercover capacity) intended to dispose of the firearms unlawfully. As a convicted felon, James could not possess firearms lawfully; thus, it is reasonable to infer that he understood the sale to Bondjuk would not be a legal sale. Further supporting this inference was James's conduct during the sale; specifically, that he wiped down the pistol before handing it to Black to hand to Bondjuk. James also admittedly had supplied (through third-parties) Bondjuk a number of firearms before, including a "sawed-off," a layman's term for an illegal firearm. James knew of additional suspicious circumstances: Bondjuk had bought several firearms, including the "sawed-off," and was interested in buying more; he and James negotiated a discount if Bondjuk bought several. Finally, and importantly, James had reason to know Bondjuk was reselling the firearms, because Bondjuk told James he had done "a little load" to someone in Alabama. Doc. 106 at 31. Based on these facts, the district court did not clearly err in finding that James had reason to know that the firearms he sold would be disposed of unlawfully. We therefore affirm the district court's application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(5).

8

**B.    James's Base Offense Level**

James also challenges his base offense level of 22, which the district court adopted based on its finding that the rifle James sold Bondjuk had attached to it a large capacity magazine.  James points out that by the district court's own recognition the government's evidence that the gun accepted a magazine and not an "attached tubular device," which cannot serve as the basis for a base offense level of 22, was weak.

We need not assess whether the district court clearly erred in finding that the ammunition feeding device was a large capacity magazine rather than a tubular device.  The district court explicitly and unambiguously said that it would have imposed the same sentence regardless of how it decided which base offense level applied.  This express statement is sufficient to trigger a harmless error analysis under *Keene*, which means we may affirm James's sentence if it is reasonable, based on the assumption that the district court decided the base offense level issue in James's favor.  *Keene*, 470 F.3d at 1348-49.  Assuming the district court had ruled in James's favor, James's base offense level would have been 20.  With the four-level enhancement for trafficking firearms and the two-level enhancement for obstruction of justice, James's total offense level would have been 26.  With a criminal history category of II, his resulting guidelines range would have been 70 to 87 months' imprisonment.  Then, we must ask whether a sentence of 108

9

months' imprisonment, a 21-month variance under the revised guidelines range, is reasonable under the sentencing factors in 18 U.S.C. § 3553(a). We conclude that it is.

We review the sentence a district court imposes for "reasonableness," which "merely asks whether the . . . court abused its discretion." *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008) (internal quotation marks omitted). Here, we cannot say the district court abused its discretion when it weighed the 18 U.S.C. § 3553(a) factors to arrive at a 108-month sentence. The district court heard extensive argument from both sides on the mitigating and aggravating circumstances of James's offense and his personal history. When considering the nature and circumstances of the offense, the district court emphasized that James had admitted he was the source of several other firearms that individuals had sold to Bondjuk. The court also emphasized that James had obstructed justice by exposing his codefendant Black as a cooperating witness, a fact that endangered Black as he served his federal sentence. And the district court emphasized the "aggravated" nature of James's criminal history, which included aggravated assault with a firearm and convictions for battery. Doc. 106 at 62. Based on these circumstances, the district court expressly weighed the § 3553(a) factors, finding "particularly significant" the "need to protect the community" and for general deterrence. *Id.* at 63. The decision about how much weight to assign a particular

10

sentencing factor is "committed to the sound discretion of the district court." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (internal quotation marks omitted). Considering the care with which the district court analyzed the § 3553(a) factors as applied to this case, we find no abuse of discretion in the court's imposition of a sentence of 108 months, even if that sentence had been a 21-month upward variance. Thus, any miscalculation of the base offense level did not affect the district court's selection of the sentence imposed; it was harmless. *Perkins*, 787 F.3d at 1341.

## IV.    CONCLUSION

James cannot show that the district court reversibly erred in imposing a sentence of 108 months' imprisonment. We therefore affirm his sentence.

**AFFIRMED.**